## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
(ORLANDO DIVISION)

| | | |
|---|---|---|
| STACEY SHORE | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:18-cv-1893-ORL-28-DCI |
| | ) | |
| v. | ) | |
| | ) | |
| GREENSPOON MARDER, P.A., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### DEFENDANT GREENSPOON MARDER, LLP'S MOTION
### FOR SANCTIONS AND INCORPORATED MEMORANDUM OF LAW

Defendant GREENSPOON MARDER, LLP ("GM") (erroneously named as Greenspoon Marder, P.A.), by and through undersigned counsel, hereby moves pursuant to Federal Rule of Civil Procedure 11(b) and the Court's inherent power, for entry of an order imposing sanctions against Plaintiff and her attorneys in the form of (a) payment of a penalty into Court; (b) payment to GM in the amount of the undersigned attorneys' fees and expenses incurred as a result of this action, including those incurred in connection with the instant Motion; and (c) any other form of relief the Court deems appropriate.

### PRELIMINARY STATEMENT

This lawsuit is a frivolous attempt by Plaintiff and her attorney to concoct purported violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA") from the perfectly valid and legal foreclosure of her two "floating week" units at a timeshare resort in Kissimmee, Florida.  GM was the trustee appointed by the timeshare developer to foreclose upon the lien granted by the Plaintiff in connection with her mortgage.

Plaintiff does not dispute that she was in default on the mortgage (for over $12,000). She now collaterally attacks the completed foreclosure and, indeed, the statutory non-judicial timeshare foreclosure regime under the Florida Vacation Plan and Timesharing Act, Fla. Stat. ch. 721 (the "Timesharing Act"). Plaintiff argues that the "floating use" nature of her former timeshares means that, lo and behold, they were personal property that could not have been foreclosed upon. Plaintiff makes this assertion even though her timeshares were deeded to her as fee simple undivided tenant in common interests in real property, she paid real property taxes on them, and in that very same deed she granted a lien that could be foreclosed upon if she defaulted on her mortgage. Plaintiff also disregards that the "floating use" is "*almost always used*" for timeshares sold as undivided tenant in common interests like hers were sold to her, a fact made known to her and her attorney in GM's first Motion to Dismiss. The "personal property" theory is entirely lacking in any support, and is barred by estoppel or otherwise by, among numerous items, Plaintiff's deed, the timeshare resort's declaration, and Florida's Timesharing Act.

The only asserted bases for this theory are intentional misreadings of the Timesharing Act and a website post by the Federal Trade Commission that the Complaint purposely mischaracterizes as a federal "regulation," "pursuant to" which "Plaintiff's Floating Use Plan interest is 'legally considered personal property.'" *See* Am. Compl. at ¶ 71 (attached hereto as Exhibit A). An attorney should be expected to understand that language in the Timesharing Act defining a "personal property timeshare interest" to apply only to an accommodation that is "not permanently affixed to real property" cannot possibly apply to Plaintiff's former timeshare interests at a resort in Kissimmee, Florida. An attorney should also know that a website posting by the FTC is *not* a federal agency regulation and, further, it is completely irrelevant to determining the nature of a property interest, which is established by state law. Florida state law

here is clear that Plaintiff's former deed timeshare interests are real property.  Thus, the "personal property" claim is a frivolous claim that no reasonable attorney would have asserted.

Plaintiff amps up the frivolousness of her claims when she addresses the Timesharing Act's nonjudicial trustee foreclosure process.  As Plaintiff's attorney should have known, and in any event, as GM stated in its first Motion to Dismiss, none of its conduct in the foreclosure can furnish the basis for an FDCPA or FCCPA violation.  It is well settled that enforcement of a security interest, without any demand for payment, is not debt collection activity and therefore generally is not subject to the FDCPA or FCCPA.  There is no conflict or disharmony.  Plaintiff pays this no heed, and instead advances the baseless notion that GM's notice to Plaintiff and the publication of the full (accelerated) balance and her right to cure – both of which were required by the Timesharing Act – subject it to liability on the view that the FDCPA preempts the Timesharing Act.  To come up with a damages claim, Plaintiff argues the trustee foreclosure process that the Florida legislature enacted is trumped by the FDCPA, and compliance with the former is a violation of the latter.  This is absurd and runs afoul of Eleventh Circuit case law.

Plaintiff's asserted FDCPA and FCCPA claims are frivolous and legally and factually baseless.  GM and its attorneys should never have had to lose time or money responding to these absurd and unreasonable assertions.  Plaintiff's claims are so untethered to any valid basis in law or fact, they are not only baseless, but also frivolous and merit the imposition of sanctions.  It was manifestly unreasonable for Plaintiff and her attorney to have re-filed and added to such frivolous claims, and the Court should therefore direct a penalty be paid into Court and impose sanctions in the amount of GM's attorneys' fees and expenses incurred responding to these claims and in connection with this Motion.  *Accord* Fed. R. Civ. P. 11(c)(4).

## ARGUMENT

**I.    THE COURT'S AUTHORITY UNDER BOTH RULE 11 AND THE COURT'S INHERENT POWER TO IMPOSE SANCTIONS**

Federal Rule of Civil Procedure 11 provides a remedy in the form of sanctions against parties and attorneys who engage in frivolous litigation and assert baseless claims.  Rule 11 provides, in relevant part:

> (b) By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> (1)    it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2)    ***the claims, defenses, and other legal contentions therein are warranted by existing law or by nonfrivolous argument*** for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>
> (3)    ***the allegations and other factual contentions have evidentiary support*** or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . . .

Fed. R. Civ. P. 11 (emphases added).

The purpose of Rule 11 is to "discourage dilatory or abusive tactics and to help streamline the litigation process by lessening frivolous claims or defenses."  *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987).  Pursuant to Rule 11, when filing a pleading in federal court, an attorney certifies that he or she has conducted a reasonable inquiry and that the pleading is well-grounded in fact, legally tenable, and is not presented for any improper purpose.  A signor can "no longer rely solely on his personal interpretation of the facts, conclusory allegations of fact, speculation, suspicion, rumor or surmise to sustain a reasonable belief."  *Gutierrez v. City of Hialeah*, 729 F. Supp. 1329 (S.D. Fla. 1990).

4

Thus, when an attorney files a pleading that has no reasonable chance of success or files a pleading in bad faith for an improper purpose, Rule 11 sanctions should be imposed. *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993). *See also Carlson v. Bosem*, 04-61004-CIV, 2007 WL 1496693 (S.D. Fla. Apr. 9, 2007), *aff'd,* 298 F. App'x 861 (11th Cir. 2008) (courts may impose sanctions under Rule 11 for bad faith conduct which is intentional or reckless). "The sanction should be imposed on the persons—whether attorneys, law firms, or parties—who have violated the rule or who may be determined to be responsible for the violations." Fed. R. Civ. P. 11 Advisory Committee Note to 1993 Amendments. In this connection, the Federal Rules specifically provide that where a party is represented by counsel, only the attorney can be sanctioned for asserting legally frivolous claims, contentions, or other legal contentions. *See* Fed. R. Civ. P. 11(c)(5)(A).

"The standard for testing conduct under . . . Rule 11 is 'reasonableness under the circumstances.'" *United States v. Milam*, 855 F.2d 739, 743 (11th Cir. 1988) (quoting *Donaldson*, 819 F.2d at 1556). A district court has the discretion to award Rule 11 sanctions:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

*Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (quoting *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)).

The Eleventh Circuit requires a two-step inquiry: (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous. *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). A claim is frivolous when the party or attorney should have been aware that the claim had no basis in law

or fact if he or she had made a reasonable inquiry. *Worldwide Primates*, 87 F.3d at 1254. The standard is an objective one – courts must determine whether a reasonable attorney in like circumstances could believe his or her actions were factually and legally justified. *Kaplan v. Daimler Chrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003).

With regard to the form of sanctions, it "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).[1] "Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty." *Id*. The Advisory Committee Notes caution, however, that "deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation." *Id.*

Additionally, Rule 11 is not the exclusive source of a court's authority to sanction a party for its bad faith conduct. "[A]lthough certain conduct may or may not be violative of Rule 11 . . . it does not necessarily mean that a party will escape sanctions under the court's inherent power." *In re Mroz,* 65 F.3d 1567, 2575 (11th Cir. 1995). *See also Maale v. Kirchgessner*, 08-80131-CIV, 2011 WL 1458258 (S.D. Fla. Mar. 3, 2011), *report and recommendation adopted,* 08-80131-CIV, 2011 WL 1458147 (S.D. Fla. Apr. 15, 2011). Sanctions under the court's inherent power are particularly appropriate "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

---

[1] Non-monetary sanctions include "striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; . . . [and] referring the matter to disciplinary authorities . . . ." Fed. R. Civ. P. 11 Advisory Committee Note to 1993 Amendments.

## II. PLAINTIFF'S THEORY THAT HER FORMER DEEDED TIMESHARE INTERESTS ARE PERSONAL PROPERTY THAT CANNOT BE FORECLOSED UPON IS PATENTLY FRIVOLOUS AND MERITS SANCTIONS

### A. Plaintiff is Barred from Contesting that Her Former Timeshare Interests Are Real Property under the Doctrine of Legal Estoppel

Plaintiff's deed is the first red flag that would have alerted any reasonable attorney that he or she had no grounds for contending Plaintiff's former timeshare interests are personal property that could not have been foreclosed upon. Plaintiff acknowledges that when she purchased her timeshare interests, she received and executed a "*WARRANTY DEED AND LIEN ON REAL PROPERTY* claiming to transfer property from Westgate to Plaintiff in Osceola County, Florida." Am. Compl. at ¶ 39. *See also id.*, Ex. 5. Plaintiff admits that the deed reflects that she "hereby expressly assumed and agrees to be bound by and to comply with all of the covenants, terms, conditions and provisions set forth contained in the Declaration . . . ." *Id.* at ¶ 40. Plaintiff, however, contends the deed "has no validity, value or ability to transfer anything to the Plaintiff as real property," (*id.* at ¶ 41), because, under the terms of the Declaration of Covenants, Conditions and Restrictions for Westgate Town Center (the "Declaration"), her timeshare interests were for a "floating use" timeshare period available on a "first come, first served" reservation basis. *Id.* at ¶¶ 42-69. See *also id.*, Ex. 6.

Plaintiff's deed, however, makes it plainly clear that she was conveyed, and accepted, real property when she purchased her timeshare interest. First, the document is titled, "Warranty Deed and Lien on **Real Property**." *Id.*, Ex. 5 (emphasis added). It further states, "Notwithstanding anything contained herein to the contrary, this instrument shall be deemed one instrument consisting of both *a conveyance of real property* and the granting and reservation of a lien and security interest." *Id.* (emphasis added). Plaintiff's deed therefore unequivocally states that she acquired an interest in real property. Under the doctrine of legal estoppel, Plaintiff

7

is precluded from arguing otherwise.  "Legal estoppel or estoppel by deed is defined as a bar which precludes a party to a deed and his privies from asserting as against others and their privies any right or title in derogation of the deed, or from denying the truth of any material fact asserted therein." *Trustees of Internal Imp. Fund v. Lobean*, 127 So. 2d 98, 102 (Fla. 1961).  *See also Belcher Ctr. LLC v. Belcher Ctr., Inc.*, 883 So. 2d 338, 339 (Fla. 2d DCA 2004) (explaining doctrine of estoppel by deed, "if applicable, would preclude [plaintiff] from asserting any right in derogation of the deed or from denying the truth of any material fact asserted in the deed").

Plaintiff is also estopped from contending that the "floating use" nature of her timeshare interests – which was made clear on the face of the Deed and her contract, (*see* Am. Compl., Exs. 3 & 5) – prevents them from being considered real property or that her timeshare interests could not have been foreclosed upon.  The Deed conveying her transfer of real property makes express mention that the timeshare interests were both "***Float Week[s] / Float Unit[s]*** according to the Time Sharing Plan for Westgate Town Center, recorded in Official Records Book 1564, at Page 1479, of the Public Records of Osceola County, Florida," the citation for the Declaration. *Id.*, Exs. 5 & 6.  The deed further states that Plaintiff granted and conveyed "a lien and security interest in the Property in order to secure repayment of the Note," and if she defaults on her mortgage, "the lien against the [Plaintiff's] Timeshare Interest created by this mortgage may be foreclosed in accordance with either a judicial foreclosure procedure or a trustee foreclosure procedure and may result in the loss of Borrower's Timeshare Interest." *Id.*, Ex. 5.

The Deed thus precludes Plaintiff from asserting every premise of her "personal property" theory.  Plaintiff acknowledged and accepted the very facts that she is now contesting by her "personal property" FDCPA and FCCPA claims.  Any reasonable attorney would have known he has no basis to argue such a timeshare interest is personal property when the deed by

which it was conveyed and accepted, and mortgaged, makes clear it is real property that could be foreclosed upon.  It is clear that Plaintiff and her attorney were aware of the Deed and its contents, so there is no excuse for their assertion of claims that are contradicted by the Deed.

> **B.      Both the Declaration and Florida Law Expressly Recognize that Plaintiff's Former Timeshare Interests Are Interests in Real Property**

The Deed is only the first stumbling block that Plaintiff and her counsel unreasonably disregarded.  In addition to Plaintiff's Deed, the Resort's Declaration and Florida law also establish, without a doubt, that Plaintiff's former timeshare interests are real property, and not personal property.  The original Complaint failed to address the Timesharing Act at all.  One would expect any attorney thinking of challenging the legal nature of a timeshare interest would have reviewed the governing statutory regime.  GM's initial Motion to Dismiss demonstrated how the Timesharing Act regards Plaintiffs' former timeshares to be "parcel[s] of real property." *Accord* Fla. Stat. § 721.05(34).  Rather than withdraw the "personal property" theory after being informed of that fact, Plaintiff and her attorney advance even more frivolous assertions in attempting to place this theory within the terms of the Timesharing Act.  Comparing this to placing a square peg in a round hole would be an understatement.

Plaintiff's "personal property" claim focuses upon the "Floating Use Plan" aspect of the Declaration to which her deeded conveyance was made subject.  The Amended Complaint, however, grossly mischaracterizes the Declaration, stating that it "is separated into two 'ownership' plans, A Time-Sharing Plan and a Floating Use Plan," and "differentiates between a deeded interest (Time Sharing Plan) and a Right to Use or Floating Interest ('Floating Use Plan)." Am. Compl. at ¶¶ 42 & 71.  There is no such separation or distinction between a deeded, real property timeshare interest and a supposed floating use, personal property timeshare interest under the Declaration or Florida law.  Plaintiff cannot premise her "personal property" theory on

a clearly incorrect reading of the Declaration.

The "Floating Use Plan" is a part of and, indeed, is the key component, of the Resort's "Time Sharing Plan."  The "Floating Use Plan" generally provides that "[n]otwithstanding the specific Unit and Unit Week assigned to an Owner" in their deed, "all Floating Unit Weeks shall be available for use by all Owners at all times on a 'first come, first served' reservation basis in accordance with this Declaration and the Floating Use Plan Rules and Regulations . . . ."  *Id.*, Ex. 6 at Art. II(C)(2)(A)(a).  "The purpose of the Floating Use Plan is to enable Floating Unit Weeks Owners to take advantage of a greater selection of time periods in which to use and enjoy their Floating Unit Weeks . . . ."  *Id.*  All but four weeks of the year (weeks 13, 14, 51, and 52) are "Floating Unit Weeks," and thus over 90% of the timeshare units at the Resort are "floating week" units and are committed to the "Floating Use Plan."  *See id.* at Art. II(C)(2)(A)(b)(1).   As Plaintiff's timeshares are in weeks 31 and 45, they are subject to the terms of the "Floating Use Plan," and that is why the Deed refers to them as "Float Weeks."  *See id.*, Ex. 5.

Plaintiff erroneously seeks to apply this attribute, which speaks to the procedure for the use and occupancy of the timeshare, to the separate question of the *form* of ownership of the timeshare interests at the Resort.  The form of ownership is the exact same for the "fixed week" or "floating week" units.  Plaintiff claims that, unlike the Declaration's "fixed week" units, in which she concedes the purchaser "received an ownership interest in fee simple of a divided interest in a building in the Resort Facility," (*id*. at ¶ 43), "[i]n the 'Floating Use Plan,' . . . the 'Owner' receives no property rights or interest . . . ."  *Id.* at ¶ 45.  There is no basis in law or any fact for this contention.  The Declaration makes clear that each owner – whether an owner of the 90-plus percent of the timeshares that are "floating use" units (48 out of 52 weeks) or of the relatively few "fixed week" units – is "convey[ed] . . . by Warranty Deed the ownership in fee

simple of an undivided interest in a building in the Resort Facility as a tenant in common with other Owners which interest shall constitute said Owner's Time Share Interest." *Id.*, Ex. 6 at Art. II(C)(1).  The Declaration further provides that "[a] Unit Week is committed to the Floating Use Plan" only "upon the conveyance of the Unit Week as evidenced by the recording of a deed in the Public Records of Osceola County, Florida indicating that the Developer is conveying that Unit Week to the purchaser as a Floating Unit Week."  *Id.* at Art. II(C)(2)(A)(b).  The assertion that the Declaration differentiates or separates the "fixed use" and "floating use" units by form of ownership is therefore plainly spurious.  Just as the Amended Complaint concedes a "fixed week" unit is real property, so too is a "floating week."  What differs is only the procedure for use and occupancy of the real property interest.

Plaintiff's "personal property" theory is barred by Florida law as well.  More specifically, the Timesharing Act expressly recognizes Plaintiff's "floating use" timeshares as an interest in real property.  The Timesharing Act provides for three basic forms of timeshare ownership, or "timeshare interests":  a fee interest in real property known as a "timeshare estate;" a non-deeded contractual right to use real property known as a "timeshare license;" and a "personal property timeshare interest."  *See* Fla. Stat. § 721.05(36).  A "floating" timeshare use plan is not a form of ownership and in fact can be utilized in any of these forms of ownership.

A "timeshare estate" is a "right to occupy a timeshare unit, coupled with a freehold estate or an estate for years with a future interest in a timeshare property or a specified portion thereof, or coupled with an ownership interest in a condominium unit pursuant to s. 718.103," among other forms of ownership.  Fla. Stat. § 721.05(34).  That is precisely what Plaintiff purchased.  *See* Am. Compl. at ¶¶ 39-40, Ex. 5.  The same statutory definition further provides that "***[a] timeshare estate is a parcel of real property under the laws of this state***."  Fla. Stat. §

11

721.05(34) (emphasis added).   Florida law is unequivocal on this point.   The Amended Complaint, however, contends Plaintiff lacked the "right to occupy a timeshare unit" because she released the right to occupy the deeded weeks into the Floating Use Plan's reservation system. *See*, *e.g.*, Am. Compl. at ¶ 52.   But she still had the right to occupy her two timeshare units "pursuant to the Plan," as stated in her Deed, (*id.*, Ex. 5) – that is what made her, as an owner at the Resort, eligible to make a reservation for a floating unit.   Plaintiff does not dispute that the Deed, Declaration, and purchase contract all made clear that her right to use was a "floating" use without regard to the specific weeks and units identified on the Deed.   The timesharing plan in the Declaration did not change her real property into personal property.

Consideration of the other types of timeshare interests under Florida law demonstrates they do not apply to Plaintiff's former timeshare interests.   A "personal property timeshare interest" – which is what Plaintiff contends she owned – is "a right to occupy an accommodation located on or in or comprised of personal property *that is not permanently affixed to real property*, whether or not coupled with a beneficial or ownership interest in the accommodations or personal property."   *Id.* at § 721.05(28) (emphasis added).   There is no dispute that Plaintiff's ownership interest in a timeshare parcel physically located at the Resort is "affixed to real property," as opposed to, for example, a vessel or a vehicle.   *See id.* at § 721.05(1).   Thus, as a matter of Florida law, Plaintiff's timeshare interest cannot be deemed personal property. Plaintiff engages in linguistic sleights of hand by intoning that real property "does not Float" and asserting that her "'right to reserve a unit'" was not "attached to any piece of real property," and thus she was conveyed personal property.   Am. Compl. at ¶¶ 37, 57, 60, 61.   These are inane statements completely disconnected from the governing statutory framework.   It is indisputable that the *accommodations* that Plaintiff had the right to use and occupy subject to the Floating Use

12

Plan – two timeshare units at the Resort – were "***permanently affixed to real property***," and therefore Plaintiff could not possibly have had a personal property timeshare interest. Plaintiff's forced assertions to the contrary are frivolous and legally unsupported.[2]

There is simply nothing disqualifying about the "floating" nature of Plaintiff's right of use of her timeshare interest that would remove it from being an interest in a "timeshare estate" and therefore real property. Indeed, the same commentator about the Timesharing Act notes that such an approach is "***almost always used***" for timeshares of the type that Plaintiff purchased, an undivided tenant-in-common interest:

> A timeshare plan can also provide for a "floating time" arrangement in which the owner of a particular timeshare estate is not automatically entitled to use the accommodations of any specific unit during any particular period of the calendar. Instead, the purchaser of a floating timeshare estate is required to make a reservation in advance for the use of a particular unit for a particular period of time. *In a floating plan, the restrictions and covenants of the timeshare instrument separate use rights from ownership rights. For example, under a floating plan, the owner of "Week 5 in Unit 101 of XYZ Condominium" would have no automatic right to occupy Unit 101 (or any other similar unit) during week five. Rather, the owner would be entitled to occupy an available unit (equivalent to Unit 101) during an available week only by making a reservation and using the rights set forth in the timeshare plan associated with owning "Week 5 in Unit 101 of XYZ Condominium."* ***Floating time is the structure almost always used for a timeshare resort that defines the timeshare estates sold in terms of an undivided tenant-in-common interest***.

Freedman, *Florida Condominium and Community Association Law* at § 6.2(C) (emphasis added).

---

[2] Nor, to the doubtful extent it is relevant, did Plaintiff have a "timeshare license." That is "a right to occupy a timeshare unit, which right is not a personal property timeshare interest or a timeshare estate." *Id.* at § 721.05(37). Plaintiff emphatically declares that her interest is in the nature of personal property. *See, e.g.,* Am. Compl. at ¶¶ 61, 62, 71, 73, 78. Also, as a commentator for a treatise published by the Florida Bar observes, "[o]bviously, a timeshare license is not a fee interest . . . ." Robert S. Freedman, The Florida Bar, *Florida Condominium and Community Association Law* § 6.2(B)(1) (2018 ed.). A fee interest, with real property taxes, is exactly what Plaintiff purchased. The Declaration provides that all timeshare interests were to be conveyed "in fee simple of an undivided interest in a building in the Resort Facility as a tenant in common with other Owners . . . ." Am. Compl., Ex. 6 at Art. II(C)(1). *See also id.*, Ex. 5.

The above quotation describes "to a tee" the property interest that Plaintiff purchased. *See* Am. Compl, Ex. 6 at Art. II(C)(1) ("Developer shall convey to each Owner by Warranty Deed the ownership in fee simple of an undivided interest in a building in the Resort Facility as a tenant in common with other Owners which interest shall constitute said owner's Time Share Interest."). Thus, what Plaintiff and/or her attorney contended was improper and resulted only in personal property is the form of use "almost always used" in timeshare estates sold in the manner that Plaintiff purchased. This is the equivalent of Plaintiff asserting a lawsuit premised on two plus two equaling five. No reasonable attorney would have done that, just as no reasonable attorney would have filed a lawsuit contending a "floating" use deeded timeshare that his client owns in an undivided tenant-in-common fee simple interest – the timeshare plan "*almost always used*" in such transfers – is personal property rather than real property that cannot be foreclosed upon through a statutory trustee foreclosure procedure.

## C.      Plaintiff's Reliance Upon FTC Website Guidance is Baseless

Plaintiff also bases her "personal property" theory on purported "regulations" from the Federal Trade Commission. No reasonable attorney would have based any claim about the nature of a property interest on this "authority." It is barely an "authority" at all. It is nothing more than a discussion on an FTC consumer-facing website stating the certain "right to use" vacation interval options are "legally considered personal property." Am. Compl. at ¶¶ 30, 70-71. *See also id.*, Ex. 4 (available at https://www.consumer.ftc.gov/articles/0073-timeshares-and-vacation-plans). This has no force and effect of law. But Plaintiff and her attorney engage in a deliberate misreading of the FTC's website, and falsely describe its nature, in a desperate effort to find *anything* they can use to prop up their frivolous "personal property" argument.

Plaintiff asserts once again that the consumer guidance on the FTC's website about

purchasing homes and other real property constitutes federal "regulations."  Am. Compl. at ¶ 71. *See also* Dkt. No. 1 at ¶¶ 35 & 37.  This is a blatant falsehood that no reasonable attorney would have asserted, let alone repeated.  A blurb on a website, even that of a federal government agency, is not a regulation.  There is simply no indication that the website is the result of an agency's rulemaking power – *i.e.*, a regulation – and certainly not one that complies with the requirements of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*., needed to have the effect and force of the law.  *Accord Chrysler Corp. v. Brown*, 441 U.S. 281, 313 (1979) ("Certainly regulations subject to the APA cannot be afforded the 'force and effect of law' if not promulgated pursuant to the statutory procedural minimum found in that Act.").  Not surprisingly, it does not appear that any court or agency has ever considered the language in the website in reaching any decision, further rendering Plaintiff's reliance upon it frivolous.

Plaintiff also contends that the Court should follow the FTC website guidance "[i]n due consideration that the FCCPA gives to the FTC," (Am. Compl. at ¶ 30), but this is yet another false move.  The Florida legislature provided that "[i]n applying and construing" the FCCPA, "due consideration and great weight shall be given to the *interpretations* of the Federal Trade Commission and the federal courts *relating to the federal Fair Debt Collection Practices Act*." Fla. Stat. § 559.77(5) (emphases added).  In addition to not being a regulation, the FTC website language is not an interpretation relating to the FDCPA.  Far from great weight, as should have been obvious to any reasonable attorney, it deserves zero weight here.

The absence of any reasonable inquiry is further underscored by the fact that, even by its own terms, the FTC's definition of a "right to use" vacation interval option that constitutes personal property does not apply here.  The FTC's website guidance states that if "[y]ou purchase the right to use an interval at the resort for a specific number of years – typically

between 10 and 50 years," then "[t]he interest you own is legally considered personal property." *Id.*, Ex. 4.  Plaintiff's former timeshare interests, however, are not a "right to use" vacation interval option, in large part because they are not "for a specific number of years."  Plaintiff did not buy an "interval option."  She instead purchased a fee simple undivided interest in a building in the Resort in perpetuity, as reflected in the deeded conveyance, and thus, as the same FTC website states, it is "is legally considered real property."  *Id.*  The Complaint utterly misstates the webpage that it relies upon, highlighting the baselessness of Plaintiff's theory.

In an attempt to conceal the frivolous nature of this theory, the Complaint tries to intentionally blur the lines between what Plaintiff owned – a deeded fee simply undivided timeshare interest that is real property – and a "right to use" vacation interval option, which are understood to have very different forms and indicia of ownership that are not confused for each other.  *See*, *e.g.*, Elizabeth A. Cameron and Salina Maxwell, *Protecting Consumers: The Contractual and Real Estate Issues Involving Timeshares, Quartershares, and Fractional Ownerships*, 37 Real Est. L.J. 278, 285-87 (2009) (discussing different forms of timeshares, such as fee ownership, interval ownership, right-to-use arrangements, vacation licenses, vacation leases, and club memberships).  The Court should not tolerate such unreasonable and baseless pleading.  As the authors explain,

> [f]ee ownership, also known as a timeshare estate, results in the purchaser receiving an actual deed related to his or her degree of ownership in the timeshare.  If the timeshare is divided into 52 equal owners, then a deed will be presented which outlines such ownership. . . .  Further, fee ownership also requires that owners pay taxes on the property they jointly possess.
>
> \*      \*      \*      \*      \*
>
> Right to use arrangements are different from both fee ownership and interval ownership in that ultimate ownership remains with the developer and not the timeshare owner. . . .  [S]tandard legal obligations and fees, especially taxes and liabilities, are not transferred to the individual timeshare purchaser.  These

arrangements include vacation licenses, vacation leases, and club memberships.

*Id*. at 285, 286.

The difference in property taxes is an important distinction that Plaintiff's "personal property" theory cannot withstand and which should have led to its immediate rejection before ever being filed.  There is no question that Plaintiff's timeshares were assessed real property taxes.  Plaintiff's contract disclosed the "Estimated Ad Valorem Tax Assessments" and included the disclosure that "[f]or the purpose of ad valorem assessment, taxation and special assessments, the managing entity will be considered the taxpayer as your agent pursuant to section 192.037, Florida Statutes."  Am. Compl., Ex. 3.  Notably, these disclosures are required only for "real property timeshare plans," otherwise known as "timeshare estates."   *See* Fla. Stat. §§ 721.06(1)(d) & (h).  It is implausible that Plaintiff, like the other owners at the Resort, paid real property taxes assessed by Osceola County – which the County assessed for every single "floating week" unit as "fee timeshare real property" pursuant to Fla. Stat. § 192.037 – for years for something that she now claims was never real property.  And it should not be tolerated for an attorney to ignore the contradictory fact that real property taxes were assessed by the local government when contending the timeshares are not real property, but personal property.

Plaintiff's and her attorney's reliance upon some FTC website remarks, even if they were on point, is also frivolous because under well-settled law, "state law controls in determining the nature of the legal interest which the taxpayer had in the property . . . ."  *Morgan v. Comm'r of Internal Revenue*, 309 U.S. 78, 82 (1940).  *See also*, *e.g.*, *Estate of Watts v. Comm'r*, 823 F.2d 483, 485 (11th Cir. 1987) (explaining that because "state law determines precisely what property is transferred," court had to determine if "tax court correctly applied the state law principles governing the definition of the property interest at issue"); *Batterton v. United States*, 287 F.

Supp. 681, 683 (M.D. Fla.), *aff'd*, 406 F.2d 247 (5th Cir. 1968) ("It is well settled that the Court must look to the law of Florida to determine what interest or right the surviving spouse . . . received . . . ."). In other words, what the FTC thinks about what kind of property a deeded timeshare interest with a "floating" use timeshare plan may be is legally irrelevant.

Florida state law controls, and as discussed above, Florida law is clear on this question – Plaintiff's former "floating week" timeshares are each in fact "a parcel of real property under the laws of this state." Fla. Stat. § 721.05(34). The FTC website's remarks are thus a red herring. Therefore, even if the FTC's remarks were correctly interpreted by Plaintiff, and even if they had the force and effect of law, they would still be of no moment. That Plaintiff intentionally misconstrued them and falsely claimed they were federal "regulations" only underscores the frivolous nature of this claim. It was patently unreasonable for Plaintiff and her attorney to assert any FDCPA or FCCPA claims based on the notion that her former timeshare interests are "personal property" that could not have been foreclosed upon. The Timesharing Act that governs Plaintiff's former timeshare interests expressly provides for foreclosure of mortgage liens on timeshares. *See* Fla. Stat. § 721.856.

Indeed, even the asserted foundation for the "personal property" theory – that "[u]nder Section 721.16(6), Plaintiff's personal property interest would not be able to be foreclosed upon as real property," (Am. Compl. at ¶ 73) – is obviously inapplicable. This is because Fla. Stat. § 721.16 applies only to liens for overdue assessments and for labor or materials. The trustee foreclosure that Plaintiff challenges, however, was against the *mortgage lien* that Plaintiff indisputably granted in the Deed, and was therefore done pursuant to an entirely separate statutory provision, Section 721.856, and not Section 721.16. Even if Plaintiff is somehow excused from knowing the difference between a mortgage lien and a lien for overdue

18

assessments, labor, or materials, her attorney cannot be excused from basing his "personal property" theory on an obviously false and flimsy foundation.  The theory comes crashing down upon the slightest scrutiny, and should never have been put in a filing.

There is thus no well-founded, good faith legal or factual basis for Plaintiff's "personal property" theory at any step of the inquiry.  A reasonable attorney would have noticed all those insurmountable obstacles and realized there is no valid argument.  Plaintiff's attorney, on the other hand, imagined support by mischaracterizing some inapposite remarks by the FTC and ignoring the provisions of the Timesharing Act.  The "personal property" theory that underlies Plaintiff's claims is built on a frivolous foundation (that is precluded by Plaintiff's own Deed).  It is hard to understand how an attorney could proceed to base a theory that a property interest is personal property because of language appearing in a Declaration when that same Declaration states that each owner was to own in the form of a fee simple interest, that is, real property.  The Declaration provides that purchasers of timeshare interests at Plaintiff's former timeshare resort are to be "convey[ed] . . . by Warranty Deed the ownership in fee simple of an undivided interest in a building in the Resort Facility as a tenant in common with other Owners which interest shall constitute said Owner's Time Share Interest."  Ex. C at Art. II(C)(1).  The Declaration further provides that "[a] Unit Week is committed to the Floating Use Plan," the use and occupancy attribute that Plaintiff frivolously contends renders the timeshare personal property, only "upon the conveyance of the Unit Week as evidenced by the recording of a deed in the Public Records of Osceola County, Florida indicating that the Developer is conveying that Unit Week to the purchaser as a Floating Unit Week."  *Id.* at Art. II(C)(2)(A)(b).

Thus, Plaintiff's theory requires the Court to accept that a deeded fee simple undivided tenancy in common interest in real property, upon being recorded and being made subject to the

Declaration's Floating Use Plan, is somehow magically converted into personal property.  No one told Osceola County, which continued to assess real property taxes every year.  And, according to Plaintiff's theory, her deed's provisions wherein she granted a lien that could be enforced by foreclosure simply vanish into thin air!  Not only that, but apparently if the Declaration is cancelled, the "floating use" units would presumably transform back to real property under Plaintiff's theory.  This argument is patently frivolous and not supported by the law in any form in the hundreds of years of the development of property law or by anything that could be considered a reasonable extension of that law.  Plaintiff and her attorney should be sanctioned for requiring GM to have to deal with this nonsense and seemingly retaliatory harassment following Plaintiff's undisputed default in the amount of over $12,000 on her mortgage obligations and the entirely valid foreclosure on her timeshares.

## III.   PLAINTIFF'S ASSERTION OF FDCPA AND FCCPA CLAIMS REGARDING THE TRUSTEE FORECLOSURE PROCEEDINGS IS ALSO FRIVOLOUS

Originally, Plaintiff asserted FDCPA and FCCPA claims based on the speculative use by GM of a lost note affidavit in the trustee foreclosure of Plaintiffs' timeshares.  *See* Dkt. No. 1 at ¶¶ 42-44.  While Plaintiff no longer asserts that speculative claim, she now goes after something that did occur:  GM's compliance with the requirements in the Timesharing Act for a trustee foreclosure, namely the mailing to her and publication of her outstanding (accelerated) balance on her mortgage and her right to cure.  *See* Am. Compl. at ¶¶ 87, 104-109, 111, 117(a), (b), (d).  Plaintiff and her attorney continue to disregard that such nonjudicial foreclosure conduct required by the Timesharing Act does not fall within the scope of the FDCPA or FCCPA.  Far from being ignorant of this case law, they advance a brazen, unprecedented, and wildly frivolous end-around to this bar against their claims: have the Court declare Florida's statutory nonjudicial trustee foreclosure procedure preempted by the FDCPA, so that mandatory compliance with the

20

former would be a violation of the latter.  But there is simply no conflict or disharmony between the FDCPA and foreclosure proceedings.

The Amended Complaint alleges FDPCA and FCCPA violations based on the Notice of Trustee's Sale that GM was required to send to Plaintiff and publicize in a newspaper under the trustee foreclosure provisions of the Timesharing Act.  *See* Am. Compl. at ¶ 87, 104-109.  While the Amended Complaint all but declares war against those provisions of the Timesharing Act as supposedly in conflict with the FDCPA and FCCPA, (*see id.* at ¶ 88-92), the Eleventh Circuit has ruled that a foreclosure proceeding to enforce a security interest, without any demand for payment, generally is not covered by the FDCPA or FCCPA.   There is no conflict.

As the trustee foreclosure process was conducted solely to enforce a security interest, namely the lien Plaintiff granted in the Deed, nothing in that process could constitute "debt collection" that would place it within the general purview of the FDCPA or FCCPA.   The Eleventh Circuit has held that, with the exception of 15 U.S.C. § 1692f(6), "enforcement of a security interest through the foreclosure process is not debt collection for purposes of the Act [the FDCPA]."  *Warren v. Countrywide Home Loans, Inc*., 342 F. App'x 458, 460 (11th Cir. 2009).  *See also Ausar-El ex rel. Small, Jr. v. BAC (Bank of America) Home Loans Servicing LP*, 448 F. App'x 1, 1-2 (11th Cir. 2011) (holding that "an enforcer of a security interest only qualifies as a 'debt collector' for the purpose of § 1692f(6)").   Accordingly, "a communication made by . . . a party in a foreclosure action or its counsel regarding the foreclosure action is not a 'communication' under 15 U.S.C. § 1692c(b)," or otherwise for purposes of the FDPCA.  *Acosta v. Campbell*, 309 F. App'x 315, 320 (11th Cir. 2009).

GM did not seek the collection or payment of any debt in the trustee foreclosure process. This means that nothing GM stated or did in the trustee foreclosure could provide the basis for an

FDPCA claim, with the one exception of § 1692f(6).  Decisions to this effect are legion.[3]  And

the same reasoning has been applied to the meaning of "collecting consumer debts" for purposes

of the FCCPA, (Fla. Stat. § 559.72), particularly given its direction that in its application, "great

weight shall be given to the interpretations of . . . the federal courts relating to the [FDCPA]."

*Id*. at § 559.77(5).  *See also Bloch v. Wells Fargo Home Mortg*., No. 11-80434-CIV, 2012 WL

12862806, *5 (S.D. Fla. June 13, 2012) ("[F]oreclosing on a mortgage is not considered a debt

collection practice under the FDCPA or the FCCPA."); *Cowan v. MTGLQ Inv'rs, L.P*., No. 2:09-

CV-472-FTM-29, 2011 WL 2462044, *3 (M.D. Fla. June 17, 2011) ("[F]oreclosing on a home is

not debt collection pursuant to the FDCPA and thus, one cannot state a claim under the FDCPA

or FCCPA based on a foreclosure action."); *Trent v. Mortg. Elec. Registration Sys., Inc*., 618 F.

Supp. 2d 1356, 1361 (M.D. Fla. 2007) ("[F]iling a foreclosure lawsuit is not a debt collection

practice under § 559.72 of the FCCPA."), *aff'd*, 288 F. App'x 571 (11th Cir. 2008).

Because a demand for payment or collection of debt is required to make a communication

related to a foreclosure subject to the FDCPA and FCCPA, Plaintiff now alleges that the Notice

of Trustee's Sale that GM sent Plaintiff "demanded payment when it gave Plaintiff an

opportunity to cure the default by paying an amount of $35,462.22."  Am. Compl. at ¶ 77.  This,

too, is a frivolous assertion.  The Eleventh Circuit and numerous district courts have held that a

notice of foreclosure that merely states the obligor has a right to cure and the cure amount,

---

[3] *See*, *e.g.*, *Dunavant v. Sirote & Permutt, P.C.*, 603 F. App'x 737, 740 (11th Cir. 2015) (affirming dismissal of FDCPA claim because "publishing foreclosure notices amounted only to the enforcement of a security interest and not the collection of a debt"); *Hampton-Muhamed v. James B. Nutter & Co.*, No. 8:15-CV-608-T-27TGW, 2015 WL 7300517, *3 (M.D. Fla. Nov. 18, 2015) ("[F]oreclosing on a security interest, such as foreclosing on a mortgage of real property, without more, is not debt collection activity within the meaning of the FDCPA."); *Dyer v. Choice Legal Grp. P.A.*, No. 5:15-CV-69-OC-30PRL, 2015 WL 3650925, *3 (M.D. Fla. June 11, 2015) ("The initiation and prosecution of a mortgage foreclosure action, standing alone, does not constitute debt collection under the FDCPA."); *Gillis v. Deutsche Bank Trust Co. Americas*, No. 2:14-CV-418-FTM-38, 2015 WL 1345309, *3 (M.D. Fla. Mar. 23, 2015) ("Plaintiff cannot assert violations of the FDCPA predicated upon only Defendants' actions in the state-court foreclosure proceedings.").

especially when such disclosures are **required by statute**, cannot constitute a demand for payment or debt collection activity.[4]  The Timesharing Act required GM, as the Trustee, to send to Plaintiff and to otherwise publicize the Notice of Trustee's Sale and state her right to cure and the cure amount, (*see* Fla. Stat. § 721.856(6)), and therefore those statements cannot be deemed a demand for payment or collection of debt.

Plaintiff either was oblivious to the above-cited case law or elected to ignore it in advancing this aspect of her FDCPA and FCCPA claims, neither of which is consistent with the requisite reasonable inquiry.  Plaintiff instead relies upon a twenty-year old, out-of-Circuit decision, *Romea v. Heiberger & Associates*, 163 F.3d 111 (2d Cir. 1998).  *See* Am. Compl. at ¶ 92.  But even if there were a dearth of case law in this Circuit that might make her resort to *Romea* valid, (which Plaintiff's attorney should have been able to determine is not the case), that decision has no utility here.  *Romea* concerned a law firm's rent demand notice that it sent to a tenant on behalf of a firm client as required by state law prior to commencement of an eviction proceeding.  There was therefore a demand for payment, and no enforcement of a security interest.  Moreover, as one district court within the Second Circuit that found *Romea* "inapposite" and "not controlling" under facts similar to those here explained,

---

[4] *See Saint Vil v. Perimeter Mortg. Funding Corp.*, 630 F. App'x 928, 931 (11th Cir. 2015) (ruling notices of sale in foreclosure proceeding were not related to debt collection where they "did not demand payment of any underlying debt," but " simply provided notice of the foreclosure, as required by Georgia law"); *Summerlin v. Shellpoint Mortg. Servs.*, 165 F. Supp. 3d 1099, 1104-05 (N.D. Ala. 2016) (holding "foreclosure notice setting forth the total amount owed on the debt but also providing contact information for Plaintiff to discuss alternatives to foreclosure" did not qualify as demand for payment because "'[s]ending just the statutorily required notice of foreclosure is not enough' to be considered debt collection") (quoting *Saint Vil*, 630 F. App'x at 932); *Littlejohn v. Citimortgage Inc.*, No. 3:15-CV-194-J-34JRK, 2016 WL 1638237, *5 (M.D. Fla. Feb. 3, 2016), report and recommendation adopted, 2016 WL 1627076 (M.D. Fla. Apr. 25, 2016) ("Merely stating that an underlying debt is 'due and owing,' in connection with a foreclosure action, does not constitute debt collection activity."); *Taylor v. Johnson & Freedman*, LLC, No. 1:09-CV-0485-CAM-JFK, 2009 WL 10693519, *10 (N.D. Ga. Aug. 4, 2009) (dismissing FDCPA claim because notice of foreclosure sale did "not contain a demand or request that plaintiff make any payment to reinstate the loan," but "simply provide[d] notice consistent with Plaintiff's statutory right to cure her default and reinstate the loan and is a necessary part of the nonjudicial foreclosure process").

in contrast to *Romea*, where the communications occurred prior to summary *eviction* proceedings, Defendants here responded to Plaintiffs' requests during the pendency of *foreclosure* proceedings. . . .  Far from a communication intending to induce Plaintiffs to pay the underlying obligations, the payoff quotes transmitted by JER Defendants were sent to provide Plaintiffs with information necessary to facilitate Plaintiffs' desire to discontinue the foreclosure actions. . . .  [I]n *Romea*, the Second Circuit did not purport to rule on whether a lien foreclosure, as opposed to an eviction proceeding, constituted the enforcement of a security interest or whether payoff letters sent to resolve a foreclosure process constituted debt collection activities.

*Boyd v. J.E. Robert Co*., No. 05-CV-2455 KAM RER, 2012 WL 4718723, *18 (E.D.N.Y. Oct. 2, 2012).

The court in *Boyd* ultimately dismissed the FDCPA claims "because the judicial foreclosures against [plaintiffs] did not seek monetary judgments against individual debtors, those foreclosure actions . . . are not debt collection activities under . . . the FDCPA." *Id.* at *20. This is the exact same conclusion that should have been obvious to Plaintiff's attorney given the Eleventh Circuit's rulings that enforcement of a security interest, including the sending of a notice of foreclosure required by statute, as a matter of law cannot constitute a demand for payment or debt collection activity.  The supposed conflict that Plaintiff advances does not exist as a settled matter of law.  The assertion of FDCPA and FCCPA claims based on this conduct, particularly when accompanied with an open declaration of preemption of the Timesharing Act's nonjudicial foreclosure process, is therefore frivolous.

## CONCLUSION

Plaintiff's Complaint is plainly frivolous and rests on a legally and factually baseless foundation.  It might be understandable had a *pro se* litigant asserted such wild and speculative claims that aim to take a legal wrecking ball to the Florida Timesharing Act, and render real property personal property and effectively make unlawful the trustee foreclosure process, but that excuse does not apply here.  GM should never have had to deal with the frivolous Complaint

24

that seems to have been filed by Plaintiff and her attorney in retaliation and to harass GM for its involvement in the valid foreclosure of Plaintiff's timeshares for her undisputed default on her mortgage.  And the Court should not tolerate such a frivolous filing.

For the foregoing reasons, Defendant Greenspoon Marder LLP respectfully requests that the Court, pursuant to Federal Rule of Civil Procedure 11(b) and the Court's inherent power, for enter an order imposing sanctions against Plaintiff and her attorneys in the form of (a) payment of a penalty into Court; (b) payment to GM in the amount of the undersigned attorneys' fees and expenses incurred as a result of this action, including those incurred in connection with the instant Motion; and (c) any other form of relief the Court deems appropriate.

## LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel certifies that he has conferred with Brian P. Parker, counsel for Plaintiff, regarding this Motion, most recently on February 8, 2019, and Plaintiff opposes the Motion and the relief sought herein.

Dated:  February 8, 2019          GREENSPOON MARDER LLP

By: __/s/ Roy Taub_____

RICHARD W. EPSTEIN
(Trial Counsel)
Florida Bar No. 229091
JEFFREY A. BACKMAN
Florida Bar No. 662501
ROY TAUB
Florida Bar No. 116263
201 East Pine St, Suite 500
Orlando, Florida 32801
Telephone:  (407) 425-6559

and

200 E. Broward Blvd., Suite 1800
Ft. Lauderdale, FL  33301
(954)491-1120

richard.epstein@gmlaw.com
maria.salgado@gmlaw.com
jeffrey.backman@gmlaw.com
khia.joseph@gmlaw.com
roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, in compliance with Federal Rule of Civil Procedure 11(c)(2), a true and correct copy of the foregoing was served on January 17, 2019 by email and by FedEx overnight delivery upon the following:

> Brian P. Parker, Esq.
> DC CAPITAL LAW, LLP
> 700 12th Street NW, Suite 700
> Washington, D.C. 20005
> (202) 888-1144
> bparker@dccapitallaw.com
>
> *Attorneys for Plaintiff*

I HEREBY FURTHER CERTIFY that a true and correct copy of the foregoing was served on all counsel of record via ECF on February 8, 2019.

      /s/ Roy Taub
                    ROY TAUB